# In the
# United States Court of Appeals for the Seventh Circuit

—————————————————

IN RE: THE BOEING COMPANY AIRCRAFT SECURITIES
LITIGATION

PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, et al.,
*Plaintiffs-Appellees,*

v.

BOEING COMPANY AND DENNIS MUILENBURG,
*Defendants-Appellants.*

—————————————————

Appeal from the United States District Court for the Northern District of
Illinois, Eastern Division, Case No. 1:19-cv-02394
(Hon. Franklin U. Valderrama)

—————————————————

**PLAINTIFFS-APPELLEES' RESPONSE TO ORDER SUSPENDING APPEAL**

—————————————————

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Salvatore J. Graziano
Katie M. Sinderson
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Salvatore@blbglaw.com
KatieM@blbglaw.com

*Counsel for Plaintiffs-Appellees*

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rules of Appellate Procedure 26.1 and Circuit Rule 26.1, Plaintiffs-Respondents Public Employees' Retirement System of Mississippi, the City of Warwick Retirement System, William C. Houser, Bret E. Taggart, and Robert W. Kegley Sr., as Trustee for the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003 state the following:

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Public Employees' Retirement System of Mississippi; the City of Warwick Retirement System; William C. Houser; Bret E. Taggart; and Robert W. Kegley Sr., as Trustee for the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bernstein Litowitz Berger & Grossmann LLP; Davidson Bowie, PLLC; and Kessler Topaz Meltzer & Check LLP

(3) If the party, amicus or intervenor is a corporation:

(i) Identify all its parent corporations.

N/A.

(ii) List any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ..................................................................... ii

TABLE OF AUTHORITIES ...................................................................................... iv

INTRODUCTION.................................................................................................. 1

BACKGROUND.................................................................................................... 3

I.     Facts, Initial Proceedings, And Class Certification ............................................ 3

II.    Motion To Reconsider And Premature Rule 23(f) Petition............................ 7

ARGUMENT ......................................................................................................10

I.     This Court Prematurely Granted Defendants' Rule 23(f) Application. ...............................................................................................10

II.    Suspension Of The Appeal Is An Inadequate Remedy....................................12

CONCLUSION ...................................................................................................20

CERTIFICATE OF COMPLIANCE .........................................................................22

CERTIFICATE OF SERVICE.................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*In re Boeing Co. Aircraft Sec. Litig.*,
   2026 WL 734721 (N.D. Ill. Mar. 16, 2026) ........................................................ 4, 6, 7

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ..................................................................... 15, 20

*Coinbase, Inc. v. Bielski*,
   599 U.S. 736 (2023) ................................................................................ 2, 10, 14

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ............................................................................................. 2

*Florian v. Sequa Corp.*,
   294 F.3d 828 (7th Cir. 2002) ........................................................... 1, 2, 13, 16

*Gary v. Sheahan*,
   188 F.3d 891 (7th Cir. 1999) ...................................................................... 10, 11

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56 (1982) ........................................................................................... 11

*Groves v. United States*,
   941 F.3d 315 (7th Cir. 2019) (Barrett, J.) ..................................................... 14

*Kusay v. United States*,
   62 F.3d 192 (7th Cir. 1995) ...................................................................... 15, 19

*Nova Scotia Health Emps.' Pension Plan v. McDermott Int'l, Inc.*,
   2025 WL 2814735 (5th Cir. Oct. 3, 2025) ..................................................... 15

*Nutraceutical Corp. v. Lambert*,
   586 U.S. 188 (2019) ................................................................................... 11, 14

*Otis v. City of Chicago*,
   29 F.3d 1159 (7th Cir. 1994) .......................................................................... 11

*Schleicher v. Wendt,*
   618 F.3d 679 (7th Cir. 2010) .......................................................................... 18

**OTHER AUTHORITIES**

Fed. R. App. P. 4(a)(4)(B)(i) .................................................................................12

Fed. R. App. P. 5(b)(2).........................................................................................19

Fed. R. App. P. 5(d)(2).........................................................................................15

Fed. R. App. P. 12.1(b).........................................................................................15

Fed. R. Civ. P. 23(f).......................................................................................10, 11

Fed. R. Civ. P. 62.1(a)(3)......................................................................................15

## INTRODUCTION

Pursuant to this Court's May 11, 2026 order, Doc. 4 (the "May 11 Order"), Plaintiffs-Appellees ("Plaintiffs") hereby submit this response to the Court's suspension of this appeal pending the District Court's ruling on Plaintiffs' Motion for Limited Reconsideration of the Court's Class Certification Order (the "Reconsideration Motion"). This appeal should be dismissed.

"This is a procedurally botched appeal." *Florian v. Sequa Corp.*, 294 F.3d 828, 828 (7th Cir. 2002). As this Court observed in the May 11 Order, an "appeal filed before the district court issues its ruling on a timely motion under Rule 59 of the Federal Rules of Civil Procedure is ineffective until the order disposing of the motion is entered on the district court's civil docket." May 11 Order. As a result, Defendants-Appellants' ("Defendants") Rule 23(f) petition, filed while the Reconsideration Motion was still pending, was "ineffective" to confer authority on this Court to rule on that petition or this appeal. Although Plaintiffs pointed out the pendency of the Reconsideration Motion in their opposition to Defendants' petition, a motions panel nonetheless granted permission to appeal.

Like Defendants' petition, that decision was premature. Nor can the error be cured by simply staying *further* exercises of jurisdiction in this appeal until the District Court rules. Because this Court prematurely ruled on the petition

while the Reconsideration Motion remained under advisement, the only proper remedy is to vacate that decision, dismiss the appeal, and allow Defendants to refile a timely Rule 23(f) petition after the District Court rules.

Doing so would also solve another intractable problem mere suspension of the appeal would cause. When this Court allowed Defendants' appeal, it stripped the District Court of jurisdiction to alter the order on review. *See, e.g.*, *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). Unless this Court dismisses the appeal and restores the District Court's jurisdiction over the Reconsideration Motion, the case may remain suspended indefinitely.

Dismissal also makes the most practical sense. It would allow this Court to consider the need for an appeal in light of any modification of the order. Indeed, the alterations to the certification order Plaintiffs have requested "might moot the appeal." *Florian*, 294 F.3d at 830. Defendants' Rule 23(f) petition primarily relied on the argument that Plaintiffs failed to provide a sufficiently advanced damages methodology to meet their burden under *Comcast Corp.* v. *Behrend*, 569 U.S. 27 (2013). But here, unlike the ordinary class-certification appeal, Plaintiffs had already served and submitted Dr. Tabak's full damages report **before** the District Court rendered its certification decision. The Reconsideration Motion relies in part on that merits-stage report. If the District Court grants reconsideration—or otherwise accounts for that full

damages report in its ruling—the operative order and record will differ materially from the order Defendants petitioned to appeal. Prudential considerations, no less than jurisdictional ones, therefore favor dismissal so that any future Rule 23(f) petition can be assessed on the final record, not on a premature and highly unusual one.

## BACKGROUND

### I.    Facts, Initial Proceedings, And Class Certification

As explained in the briefing on Defendants' (premature) Rule 23(f) petition, this securities fraud action arises from Defendants' misrepresentations concerning the safety of Boeing's new 737 MAX aircraft in the aftermath of a fatal crash in October 2018. After a second fatal 737 MAX crash, five months later, regulators around the world grounded the aircraft because of safety concerns. Boeing's stock fell precipitously in response. It declined further in the coming months as other revelations disclosed additional facts concerning the 737 MAX's safety issues and Boeing's deception of the FAA at the time the 737 MAX was first certified.

Plaintiffs filed their complaint in 2019, nearly seven years ago. In 2024, the District Court largely denied Defendants' Motion to Dismiss, setting the stage for discovery and class certification. In February 2025, Plaintiffs moved to certify a class of Boeing common stock and/or options investors who made

purchases between November 7, 2018 and December 16, 2019. In support of their motion, Plaintiffs submitted an expert report by Dr. David Tabak, one of the foremost economic experts in securities litigation. Among other things, Dr. Tabak examined market efficiency for Boeing's common stock and options and explained that he could calculate damages on a class-wide basis using the out-of-pocket damages methodology, which is "the standard measurement of damages in Section 10(b) securities cases." *In re Boeing Co. Aircraft Sec. Litig.*, 2026 WL 734721, at *12 (N.D. Ill. Mar. 16, 2026). Defendants argued in response, among other things, that Dr. Tabak failed to sufficiently detail a methodology for calculating damages, citing *Comcast. Id.* at *11-12.

In connection with Plaintiffs' class certification reply, Dr. Tabak submitted a report further detailing his proposed methodology for measuring damages. He explained that his "damages theory assumes that in the but-for world, after the pre-Class Period Lion Air 737 MAX crash, Boeing would have disclosed the information that Plaintiffs say was misrepresented or omitted" and that the 737 MAX therefore "would have been grounded by the start of the Class Period." District Court Dkt. No. 434-3 ¶¶54, 57. Alternatively, Dr. Tabak indicated that, while his view of damages did not require "an analysis of crash probabilities," "it would be particularly feasible in this matter" if the District Court required it. *Id*. ¶¶58-61 (this approach would compare "(a) the market's

4

actual perception of the risk" (here of an MCAS-related 737 MAX plane crash) and (b) what the perception of that risk would be had the alleged misrepresentations and omissions been corrected)".

Following Defendants' opposition and Plaintiffs' reply, the District Court allowed Defendants to file a sur-response and a supplemental report from their expert. In that sur-response, Defendants argued for the first time that the fundamental assumption underlying Dr. Tabak's proposed damages model— that the disclosure of the truth about the safety of the 737 MAX would have led to the plane's grounding—was purportedly absent from Plaintiffs' Complaint. That was false. The theory was set forth in Plaintiffs' Complaint, alongside the critical fact that the 737 MAX was grounded by regulators around the world after the second crash because of safety concerns. But the District Court denied Plaintiffs' request for an opportunity to respond, District Court Dkt. No. 480, and did not hold oral argument on the motion, so Plaintiffs were unable to correct Defendants' error before the District Court ruled.

While class certification was pending, discovery continued. Defendants produced an additional 750,000 pages of documents, Plaintiffs completed depositions, and Plaintiffs' experts produced merits reports, including Dr. Tabak's full damages report. In reliance on the opinions of Plaintiffs' three other experts (in the areas of aviation regulation, piloting, and avionics), which in

turn relied on the extensive discovery record, Dr. Tabak's full damages analysis assumed that Plaintiffs will prove that the 737 MAX would have been grounded after the first fatal crash if Boeing had told the truth.

On March 12, 2026, Plaintiffs moved to supplement the class certification record with Dr. Tabak's full damages analysis, explaining that it further mooted Defendants' *Comcast* objections because it "provides a complete damages model that: (1) calculates artificial inflation in Boeing's stock price on each trading day of the Class Period; (2) measures loss causation for both Boeing's common stock and options; and (3) permits damages calculations for all Boeing securities traded during the Class Period for every member of the proposed class." District Court Dkt. No. 483 ¶7.

The District Court certified the Class on March 16, 2026, issuing a 62-page opinion that considered and largely rejected Defendants' *Comcast* arguments, finding that Dr. Tabak's proposed methodology, involving "an event study and 'out-of-pocket' methodology to measure damages," was "capable of measuring class-wide damages and . . . consistent with Plaintiffs' theory of liability," which was "all Rule 23(b)(3) and *Comcast* requires." *Boeing*, 2026 WL 734721, at *12.

However, the District Court accepted Defendants' contention in their sur-response (to which Plaintiffs had not been allowed to respond) that Dr. Tabak's grounding approach was "untethered" to Plaintiffs' theory of liability. *Boeing*,

2026 WL 734721, at *17. The District Court further found that Dr. Tabak was not qualified to opine on whether the 737 MAX would have been grounded "if Boeing had made different disclosures." *Id*. As discussed next, for reasons that would have been pointed out in Plaintiffs' rejected sur-reply, that was mistaken.

The District Court did, nonetheless, find that Dr. Tabak's alternative approach—in which he would calculate crash-related probabilities—satisfied Plaintiffs' burden under *Comcast*. *Id*. at *18. For that reason, the Court concluded that Plaintiffs' motion to supplement the record with Dr. Tabak's merits report was unnecessary and denied the motion as moot. *Id.* at *10 n.6.

## II. Motion To Reconsider And Premature Rule 23(f) Petition

On March 27, 2026, Plaintiffs timely filed their Reconsideration Motion, challenging the District Court's determination that Dr. Tabak's primary grounding approach was not properly presented.

The Reconsideration Motion explains that Dr. Tabak's assumption that Plaintiffs would prove that "the 737 MAX would have been considered unsafe to fly or grounded at the start of the Class Period had the truth been fully disclosed" was "expressly alleged in the Complaint" at multiple points and that the Court misapplied Seventh Circuit law on the materialization-of-the-risk framework to Plaintiffs' allegations. District Court Dkt. No. 489-1 at 1. Plaintiffs further explained that they were not relying on Dr. Tabak to establish that the

737 MAX would have been grounded if Boeing had been truthful from the outset, but rather asked him to assume that fact, which would be proven to the factfinder "through evidence and other experts." *Id*. at 14 n.2. And they explained that the Court can and should rely on Dr. Tabak's final merits report, with its complete calculation of damages, in addition to his class-certification reports, in its revised order to demonstrate that Plaintiffs had gone well above and beyond their *Comcast* burden. In the alternative, Plaintiffs asked the District Court to allow them to revise Dr. Tabak's merits damages report, consistent with the Court's order and the crash-probability approach Dr. Tabak had described in his class certification report. *See id.* at 4-5.

Three days later, while the Reconsideration Motion was pending in the District Court, Defendants filed a Rule 23(f) petition with this Court, seeking interlocutory review of the class certification still under consideration in the District Court. No. 26-8007, Doc. 1. The petition did not disclose the pendency of the Reconsideration Motion. Plaintiffs opposed the petition on multiple grounds, including that "[a]s Defendants know, yet omitted from their Petition, Plaintiffs sought reconsideration of that finding days before Defendants filed this Petition, further demonstrating that Rule 23(f) review should not be granted." No. 26-8007, Doc. 16, at 19. Plaintiffs attached the Reconsideration Motion to their opposition. *Id.*, S. App. 01. In their reply, Defendants

acknowledged that the Reconsideration Motion was pending, but urged this Court to grant their Rule 23(f) petition nonetheless. *See* No. 26-8007, Doc. 22, at 11.

On May 7, 2026, a motions panel granted Defendants' petition. No. 26-2018, Doc. 1-1. This Court put the appeal on its docket. *See id.* Four days later, the Court issued an order noting that its "preliminary review of the short record suggests that the order appealed from may not yet be an appealable decision" because "[a]n appeal filed before the district court issues its ruling on a timely" motion to reconsider "is ineffective until the order disposing of the motion." No. 26-2018, Doc. 4 (citing Fed. R. App. P. 4(a)(4), *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 837 (7th Cir. 1999)); *see also id.* (if timely, the pending motion to reconsider "renders this appeal premature") (citing *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 197 (2019); *Florian*, 294 F.3d at 829).

The Court suspended further proceedings in this appeal pending resolution of the Reconsideration Motion. No. 26-2018, Doc. 4. It further ordered that if any "party contends that this appeal should not be suspended, then that party should file a brief memorandum on or before May 26, 2026, stating why suspension is not appropriate." *Id.* Plaintiffs now file this memorandum in response, seeking dismissal of this appeal.

**ARGUMENT**

As this Court's May 11 Order recognizes, Defendants' Rule 23(f) application was premature and ineffective. This Court therefore prematurely exercised appellate authority by granting it. Simply suspending proceedings until the District Court rules on the pending Reconsideration Motion will not remedy this jurisdictional infirmity; instead, the appeal should be dismissed outright. Indeed, unless this Court dismisses the appeal, the District Court will never be *able* to rule on the Reconsideration Motion, because the pendency of an appeal in this Court deprives the District Court of jurisdiction to modify the order on appeal. *See, e.g.*, *Coinbase*, 599 U.S. at 740. Dismissal is also the only fair and sensible way to proceed. Particularly if the District Court grants the Reconsideration Motion, this Court must consider whether an interlocutory appeal remains warranted in light of any revisions. Indeed, there is every reason to think that the alterations Plaintiffs have requested would moot the need for interlocutory review, because they address Defendants' fundamental *Comcast* objections.

**I.    This Court Prematurely Granted Defendants' Rule 23(f) Application.**

This Court is authorized to grant an interlocutory appeal of a class-certification order only if the appealing party files a proper petition within the timeframe established by the federal rules. *See* Fed. R. Civ. P. 23(f); *Gary v.*

*Sheahan*, 188 F.3d 891, 892-93 (7th Cir. 1999). Those rules prohibit the Court from considering a petition filed more than 14 days after the certification order is entered *or* while a motion to reconsider the order is pending. *See id.*; *Nutraceutical*, 586 U.S. at 197 (a class certification order is "not final" while reconsideration is pending) (quoting *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (per curiam)); *cf. also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 60-61 (1982) (a notice of appeal filed while a timely Rule 59 motion is pending "shall have no effect"; "it is as if no notice of appeal were filed at all. And if no notice of appeal is filed at all, the Court of Appeals lacks jurisdiction to act."); *see also, e.g., Otis v. City of Chicago*, 29 F.3d 1159, 1166 (7th Cir. 1994) (en banc) (same).

That rule makes perfect sense. Rule 23(f) empowers this Court to grant review of "an *order* granting or denying class-action certification." Fed. R. Civ. P. 23(f) (emphasis added). Until a motion to reconsider is resolved, there is no way of knowing if the original decision Defendants prematurely appealed will be the actual "order" that governs class certification and which this Court would ultimately review. Nor can this Court sensibly exercise its discretion to allow an appeal when it does not yet know what the order ultimately will say.

Despite this well-established rule, Defendants filed their petition three days *after* Plaintiffs' Reconsideration Motion suspended the finality of the class certification order. Defendants did not disclose the Reconsideration Motion.

And when Plaintiffs objected on the ground that the District Court was still considering whether to modify the order, Defendants urged the Court to proceed rather than admitting their error. *See* No. 26-8007, Doc. 22, at 11. Because Defendants' petition was filed before the certification decision became appealable, the grant of review should be vacated and the appeal dismissed.

## II.    Suspension Of The Appeal Is An Inadequate Remedy.

In some cases, a court of appeals can appropriately respond to a premature appeal by simply waiting for the District Court to rule on a motion to reconsider before exercising appellate jurisdiction over the case. But in this case, the Court has already exercised jurisdiction over the case by granting Defendants' request for an appeal. Simply suspending that improvidently granted appeal is an insufficient response to the problem for multiple reasons.

*First*, suspension would not remedy the Court's premature and unauthorized resolution of Defendants' petition.

To be sure, suspension of appellate proceedings is often a perfectly acceptable response to a premature attempt to appeal. For example, when a party files a notice of appeal from a final judgment while a motion to reconsider is still pending, the Rules provide that "the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i). Accordingly, when

the defendant in *Florian* prematurely appealed from a final judgment under reconsideration, this Court noted that the case should have been stayed at the outset, when the problem was identified. 294 F.3d at 829. That would have ensured that the Court did not exercise jurisdiction over the case until the judgment was final and jurisdiction conferred on the court of appeals.[1]

The Court could have taken that route at the outset of this appeal as well: It could have declined to rule on Defendants' Rule 23(f) petition until the District Court resolved the Reconsideration Motion, and then treated the petition as effective only if the District Court denied reconsideration or otherwise left the challenged aspect of the order materially unchanged. But instead, Defendants wrongly insisted that the Reconsideration Motion posed no impediment to ruling on their premature petition and this Court granted permission to appeal. The problem is not merely that merits briefing should await the District Court's ruling. The problem is that this Court has already taken the Rule 23(f) action that matters—granting permission to appeal. While Rule 23(f) appeals involve two separate exercises of appellate authority—the

---

[1] No such stay was entered in *Florian* and this Court ultimately dismissed the appeal "as a sanction" for the appellant's failure to notify the Court of the defect. 294 F.3d at 830. That option is available to this Court as well.

decision whether to grant the appeal and the decision on the merits—neither can be exercised in the absence of a proper Rule 23(f) petition. A stay at this point would not cure the Court's exercise of appellate power it did not yet have.

Accordingly, the only proper response is to vacate that unauthorized decision. *See Nutraceutical*, 586 U.S. at 198 (vacating decision where court of appeals improperly granted untimely Rule 23(f) petition).[2]

**Second**, while the May 11 Order is premised on this Court resuming the appeal once the Reconsideration Motion is decided, unless this Court dismisses the appeal, the District Court may never be able to decide that motion, and the appeal will be suspended indefinitely.

"An appeal, including an interlocutory appeal, divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase*, 599 U.S. at 740 (citation omitted); *see also Groves v. United States*, 941 F.3d 315, 319-20 (7th Cir. 2019) (Barrett, J.) (Once an interlocutory order "is on appeal, the

---

[2] In *Nutraceutical*, the Supreme Court explained that the 14-day deadline for Rule 23(f) petitions is not "jurisdictional" in the sense that Courts *must* raise the defect even if the parties do not. 586 U.S. at 192. The Supreme Court did not decide whether the existence of a final class certification order is jurisdictional in that sense or merely "mandatory." *Id*. Either way, now that this Court has recognized the untimeliness of Defendants' petition, it should not ignore the problem even if the Court had no obligation to search it out.

district court can no longer modify it."). Jurisdiction over the certification order was transferred from the district court to this Court when this Court granted Defendants' appeal. *See* Fed. R. App. P. 5(d)(2); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) (district court "retains jurisdiction over an interlocutory order . . . until a court of appeals grants a party permission to appeal."); *see further Nova Scotia Health Emps.' Pension Plan v. McDermott Int'l, Inc.*, 2025 WL 2814735, at *4 (5th Cir. Oct. 3, 2025) (unpublished) (same).

Dismissal is therefore necessary to restore jurisdiction to the District Court. *See Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995) ("Just as the notice of appeal transfers jurisdiction to the court of appeals, so the mandate returns it to the district court. Until the mandate issues, the case is 'in' the court of appeals, and any action by the district court is a nullity.").[3]

---

[3] The indicative-ruling procedure of Fed. R. Civ. P. 62.1 and Fed. R. App. P. 12.1 offers no workable alternative to dismissal here. That procedure permits a district court divested of jurisdiction to state "that it would grant the motion if the court of appeals remands for that purpose," Fed. R. Civ. P. 62.1(a)(3), with this Court then "retain[ing] jurisdiction unless it expressly dismisses the appeal," Fed. R. App. P. 12.1(b). Waiting for a potential indicative ruling on the Reconsideration Motion is no solution, however, because this Court never obtained proper jurisdiction in the first place and therefore has no jurisdiction to retain. Moreover, if the District Court were eventually allowed to modify its order, this Court could obtain jurisdiction over *that* order only by Defendants

**Third**, only dismissal would allow this Court to assess any request for interlocutory review on the operative class-certification decision and final record. If the District Court materially alters the decision, Defendants' existing petition would no longer address the order to be reviewed and the changes "might moot the appeal." *Florian*, 294 F.3d at 830.

The Reconsideration Motion could alter the relevant record in at least two critical respects. First, Defendants' Rule 23(f) petition primarily argued that Plaintiffs "failed" to provide "evidentiary proof of an actual methodology for calculating 'out-of-pocket' losses on a class-wide basis," as they claimed *Comcast* required. No. 26-8007, Doc. 1, at 1-2.[4] Plaintiffs have urged that any revised Order be based on Dr. Tabak's comprehensive merits report as well as his prior class-certification submissions.[5] If the District Court does so,

---

filing a new Rule 23(f) petition and this Court making a new decision. It would be far more straightforward for this Court to simply dismiss the appeal and allow Defendants to file a new petition once the District Court rules.

[4] Defendants also questioned the market efficiency for Boeing options. If the District Court grants the Reconsideration Motion, Defendants will be free to file a new Rule 23(f) petition attempting to explain why those market efficiency objections alone warrant interlocutory review of the Order.

[5] *See, e.g.*, District Court Dkt. No. 489-1 at 4-5 (Dr. Tabak "is required to analyze what would have happened in the 'but-for world'—and he properly does so, relying on Plaintiffs' aviation experts, in his Merits Report"); *id.* at 9-10

16

Defendants could not continue to (albeit wrongly) characterize Plaintiffs' showing as a placeholder for some later-developed methodology. Dr. Tabak's merits report provides a complete damages analysis that goes well beyond what *Comcast* requires at class certification.

There is good reason to think the District Court will grant this relief. While the District Court concluded the grounding assumption was "not clear from the face of the Amended Complaint," the Motion explains in detail where that theory appears in the complaint. *See* District Court Dkt. No. 489-1 at 1-2, 12-13. And while the District Court found that Dr. Tabak lacked the expertise to support the grounding assumption, Dr. Tabak's merits report was grounded in the extensive opinions of three other experts who ***do*** have that expertise.

Second, Defendants' petition argued that none of Dr. Tabak's proposed damages methodologies adequately addressed the materialization-of-risk theory on which the Complaint was supposedly based. No. 26-8007, Doc. 1, at 1-2 at 18-19. The Reconsideration Motion targets that point too, asking the

---

(summarizing the merits report); District Court Dkt. No. 496 at 11 ("Plaintiffs' proposed damages approach and Dr. Tabak's merits-stage damages model are both fully consistent with a 'materialization of risk' framework under the approach that discovery, including Plaintiffs' other experts, has confirmed— that the 737 MAX would have been grounded had the truth been disclosed at the start of the Class Period").

District Court to conform its analysis of materialization of risk to controlling Seventh Circuit law and explaining why the grounding approach fits that framework. Although the District Court held that Dr. Tabak's damages analysis was required to address the legal theory of "materialization of the risk" loss causation, the Reconsideration Motion explains that this is not the law. Under *Schleicher v. Wendt*, "materialization of risk" is "not a legal doctrine or anything special"; it is simply a way of describing loss causation—how "the loss is realized when the truth turns out to be worse than the statement implied." 618 F.3d 679, 683 (7th Cir. 2010).[6] Plaintiffs also explained that, even if such a showing were required, Dr. Tabak's grounding approach satisfies it. If the District Court addresses that point on reconsideration, Defendants' petition would no longer present the same issue, which is a critical reason this Court should await the final certification ruling to determine whether interlocutory review is appropriate.

---

[6] Plaintiffs also requested that, if necessary, Dr. Tabak be permitted to amend his merits report to conform it more closely to the district court's understanding of a proper materialization-of-the-risk approach. District Court Dkt. No. 489-1 at 15. The Court might grant that motion, or ask to review a proposed amended report, before resolving the Reconsideration Motion and potentially modifying the order. Again, the District Court could do so only if the Court returned jurisdiction to the trial court by dismissing this appeal.

Accordingly, if the District Court grants reconsideration, Defendants could not simply renew their original objections. They would have to explain why immediate review remains warranted in light of the revised order and record. At the very least, waiting and seeing is prudent.

**Fourth,** even if the District Court denies reconsideration, dismissal is still the best way to ensure orderly disposition of the class certification dispute.

Had Defendants waited until the class certification order was finalized, Plaintiffs would have been entitled to seek this Court's review of any objectionable portions of the District Court order through a cross-petition filed within 10 days of Defendants' submission. *See* Fed. R. App. P. 5(b)(2). If this Court simply suspends the appeal, Plaintiffs would be required to file an independent Rule 23(f) petition when the District Court decides reconsideration, which could well be presented to a different motions panel, causing unnecessary confusion, duplication of briefing, and delay.

**Finally**, moving forward with an appeal certified on the basis of this petition would unnecessarily call into question the validity of any decision this Court might later reach on the merits—either because this Court prematurely granted the petition or because the District Court lacked jurisdiction at that time to issue the modified order this Court might ultimately end up addressing. *See, e.g.*, *Kusay*, 62 F.3d at 194 (while case remains in court of appeals, "any

19

action by the district court is a nullity").

* * *

Given all this, even if the Court had discretion to proceed with the appeal, there are ample reasons to instead dismiss and proceed on a clean slate after the District Court properly rules on the motion for reconsideration. *Cf. City of Los Angeles*, 254 F.3d at 886 & n.1 (recognizing that "by inappropriately granting [defendants] permission to bring this interlocutory appeal, rather than immediately dismissing it for lack of jurisdiction, we have needlessly prolonged a final resolution of the merits of this case").

**CONCLUSION**

For the foregoing reasons, the appeal should be dismissed.

May 18, 2026

Respectfully submitted,

*/s/ Salvatore J. Graziano*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano
Katie M. Sinderson
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Salvatore@blbglaw.com
KatieM@blbglaw.com

*Lead Counsel for Plaintiffs-Appellees Public Employees' Retirement System of Mississippi and the City of Warwick*

*Retirement System and Lead Counsel for the Class*

**KESSLER TOPAZ
MELTZER & CHECK LLP**
Andrew L. Zivitz
Joshua A. Materese
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
azivitz@ktmc.com
jmaterese@ktmc.com

*Counsel for Plaintiffs-Appellees William C. Houser, Bret E. Taggart, and Robert W. Kegley Sr., as Trustee for the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003*

21

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit as set out in Circuit Rule 32-1(a), because it contains 4,553 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32-1(c).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point New Century Schoolbook LT Std font.

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system on May 18, 2026. All participants in the case are registered CM/ECF users, and service of publicly filed documents will be accomplished by the appellate CM/ECF system. Service of documents filed provisionally under seal will be accomplished by email to counsel of record.

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano

*Counsel for Plaintiffs-Appellees*